JOEL V. MILLER, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miller v. Commissioner
Docket No. 25479-81.
United States Tax Court
T.C. Memo 1983-476; 1983 Tax Ct. Memo LEXIS 305; 46 T.C.M. (CCH) 1054; T.C.M. (RIA) 83476; August 15, 1983. *305 Held, in these circumstances, respondent's determinations of income tax deficiencies and additions to the tax under secs. 6653(b) and 6654, I.R.C. 1954, sustained. Held further, on the Court's own motion, damages are awarded to the United States in the amount of $500 since this proceeding was instituted merely for delay. Sec. 6673, I.R.C. 1954. Joel V. Miller, Jr., pro se. Ralph W. Jones, for the respondent. DAWSON
*306 MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge: This case was assigned to Special Trial Judge Francis J. Cantrel for the purpose of considering and ruling on respondent's Motion for Summary Judgment filed herein. After a review of the record, we agree with and adopt his opinion which is set forth below. [1]
OPINION OF THE SPECIAL TRIAL JUDGE CANTREL, Special Trial Judge: This case is before the Court on respondent's Motion for Summary Judgment filed pursuant to Rule 121, Tax Court Rules of Practice and Procedure, on March 29, 1983. Therein respondent seeks summary adjudication *307 in his favor on the legal issues at bar, i.e., the determined income tax deficiencies and the additions to the tax under sections 6653(b) and 6654. [2]
Respondent, in his notice of deficiency issued to petitioner on August 13, 1981, determined deficiencies in petitioner's Federal income tax and additions to the tax for the taxable calendar years 1977 and 1978 in the following respective amounts: Additions to Tax, I.R.C. 1954
Years
Income Tax
Sec. 6653(b)
Sec. 6654
1977
$1,574.00
$787.00
$46.84
1978
1,904.00
952.00
56.22
The sole income adjustments determined by respondent in his deficiency notice are for wages received by petitioner in 1977 and 1978 in the respective amounts of $11,561.28 and $12,920.00. Petitioner timely filed his petition herein on October 8, 1981. Petitioner at paragraphs 4. and 5. of the petition recites: 4. The determination of tax set forth in the said notice of deficiency is based upon the following errors: A. The amount allowed by the Commissioner for lawful deductions and expenses is incorrect. 5. The facts upon which *308 the Petitioner relies, as the basis of his case, are as follows: A. Petitioner had more lawful deductions and expenses than what was allowed by the Commissioner. [3]
* * * Respondent filed his answer on December 7, 1981 wherein at paragraphs 7.(a) through (j) he makes affirmative allegations of fact in support of his determinations for the additions to the tax under section 6653(b). Petitioner filed no reply, the time for the filing of which expired on January 18, 1982. Hence, the affirmative allegations of fact contained in respondent's answer are deemed denied. However, the pleadings are deemed closed and respondent's motion was filed more than 30 days after the pleadings were closed. See Rules 34, 36, 37, 38, and 121. When respondent's attempts to make arrangements with petitioner for informal consultations or communications proved unsuccessful, [4] he, on December 21, 1982, served a Request for Admissions on petitioner. [5] While petitioner maintains he served answers on respondent within the time provided by Rule 90(c) no proof of that fact is in this record. Petitioner admits that he did not timely file *309 the original of any such answers with the Court as provided by Rule 90(c). In such circumstances, each matter contained in respondent's Request for Admissions is deemed admitted and conclusively established. Freedson v. Commissioner,65 T.C. 333, 335 (1975), affd. 565 F.2d 954 (5th Cir. 1978); Rules 90(c) and (e). [6]
On April 29, 1983 petitioner filed a Motion to Vacate Deemed Admissions, which was denied by the Court on May 3, 1983. [7] Also, on April 29, 1983, the Court received from petitioner a document entitled "Responses to Request for Admissions" which was filed on that date. A careful review of that document discloses each response to be frivolous. The following findings of fact are based upon the record *310 as a whole, the allegations of respondent's answer admitting allegations in the petition and those matters deemed admitted and conclusively established with respect to respondent's request for admissions. FINDINGS OF FACT Petitioner's legal address on the date he filed his petition was Rt. 6, Box 98B, Idaho Falls, Idaho. He filed no Federal income tax returns for the taxable years 1977 and 1978 with the Internal Revenue Service. During each of the taxable years 1977 and 1978 petitioner was employed as a meat cutter by Golden Valley Packers (hereinafter sometimes called Golden Valley) at Roberts, Idaho. He was an unmarried individual who had no dependents. In 1977 and 1978 petitioner received wages from Golden Valley in the respective amounts of $11,561.28 and $12,920.00. In both years he was paid by check. He cashed the checks he received and secreted the currency. Golden Valley provided petitioner with wage and tax statements (Forms W-2) for both 1977 and 1978 reflecting the wages paid to him in those years. [8]
Petitioner filed a Form W-4 (Employee's *311 Withholding Allowance Certificate) dated January 3, 1975 with Golden Valley wherein he claimed one allowance. He filed a Form W-4 with Golden Valley on or about January 21, 1977 claiming ninety-nine allowances.On or about May 10, 1977 he filed a Form W-4E (Exemption from Withholding) with his employer claiming he was exempt from the withholding of Federal income tax. On or about January 1, 1978 petitioner filed a Form W-4 with his employer on which he claimed twenty-two allowances. [9]
Golden Valley withheld taxes from petitioner's wages on occasion but upon complaint of petitioner to Charles Hayes, Vice-President of Golden Valley, and upon petitioner's insistence that the withheld taxes be refunded to petitioner, Golden Valley refunded certain withholdings to petitioner. Petitioner informed Mr. Hayes that he did not want any tax withheld from his wages because he filed and paid his tax at year's end. For each of the taxable years 1974 and 1975 petitioner filed valid Federal income tax returns and reported thereon the income he received. He submitted a 1976 Form 1040 to the Internal *312 Revenue Service on which no income was reported and on which frivolous constitutional contentions were stated. He submitted an amended 1976 Form 1040 to the Internal Revenue Service on which no income was reported. Every line of that Form contained the language "Object Self-Incrimination". Forms 1040, containing the same language and reporting no information pertaining to income, were submitted to the Internal Revenue Service by petitioner for the taxable years 1977 and 1978 (the years before the Court). A similar Form 1040 was submitted by petitioner to the Internal Revenue Service for the taxable year 1980. Sometime in 1979 petitioner submitted a Form W-4 to Golden Valley. He advised therein that he was single and in response to the total number of allowances he was claiming he stated "Don't hold anything". Golden Valley provided petitioner with a Form W-2 reflecting the wages paid to petitioner in 1979 ($8,745). That Form discloses that no Federal income tax was withheld from petitioner's wages in 1979. Petitioner fraudulently, and with intent to evade tax, submitted false Forms W-4 and a false Form W-4E to Golden Valley to eliminate the withholding of Federal income *313 tax from his wages in 1977 and 1978. He fraudulently, and with intent to evade tax, failed to file Federal income tax returns for 1977 and 1978. The Forms 1040 submitted for those years did not constitute "returns". Petitioner failed to report taxable income which he received for the taxable years 1977 and 1978 in the respective amounts of $11,561.28 and $12,920.00. He failed to report and pay his income tax liabilities for those years in the amounts of $1,574.00 and $1,904.00, respectively. A part of the underpayment of tax which petitioner was required to show on an income tax return for the taxable years 1977 and 1978 is due to fraud with intent to evade tax. OPINION Rule 34(b) provides in pertinent part that the petition in a deficiency action shall contain "clear and concise assignments of each and every error which the petitioner alleges to have been committed by the Commissioner in the determination of the deficiency or liability" and "clear and concise lettered statements of the facts on which petitioner bases the assignments of error * * *". (Emphasis added.) It is abundantly clear, upon review of the petition filed herein, the pertinent parts of which *314 are recited hereinabove, that no justiciable error has been alleged with respect to the Commissioner's determinations respecting the wage income petitioner received and the additions to the tax under sections 6653(b) and 6654. [10]
While petitioner has asserted error respecting "lawful deductions and expenses", which may have impacted on the income tax deficiencies, he has alleged not a single justiciable fact in support of that allegation of error. We are not advised as to what the deductions and expenses were or the amounts thereof. It appears from this record that petitioner refuses *315 to produce any records to respondent unless he is granted immunity. See Martindale v. Commissioner,692 F.2d 764 (9th Cir. 1982), [11] affg. without published opinion an unreported order and decision of this Court. See also Goodrich v. Commissioner,T.C. Memo. 1983-414. Therefore, petitioner's claim must be taken as wholly frivolous. Petitioner in refusing to properly plead his case has, regrettably and fatally, concentrated his attack on raising frivolous contentions, which have oft been rejected by this and other Courts and which we answer hereinbelow. [12]
The decision whether to grant immunity rests with the United States, not with the Tax Court. 18 U.S.C. Sections 6000-6005 (1976). McCoy v. Commissioner,696 F.2d 1234 (9th Cir. 1983), affg. 76 T.C. 1027 (1981); Hartman v. Commissioner,65 T.C. 542, 547-548 (1975). *316 To invoke the Fifth Amendment privilege, petitioner must be faced with substantial hazards of self-incrimination that are real and appreciable, and must have reasonable cause to apprehend such danger. The privilege may not itself be used as a method of evading payment of lawful taxes. Edwards v. Commissioner,680 F.2d 1268, 1271 (9th Cir. 1982), affg. per curiam an unreported decision of this Court; McCoy v. Commissioner,supra.[13] There is nothing in this record remotely indicating that petitioner is faced with substantial hazards of self-incrimination or that he has reasonable cause to apprehend such danger. The determinations made by respondent in his notice of deficiency respecting the income tax deficiencies and the additions *317 to the tax under section 6654 are presumed correct; the burden is on petitioner (not respondent) to show those determinations are wrong, and the imposition of the burden of proof is constitutional. Welch v. Helvering,290 U.S. 111 (1933); Rockwell v. Commissioner,512 F.2d 882, 887 (9th Cir. 1975); Rule 142(a). Petitioner has not even attempted to carry that burden; he has failed to allege any fact or legal theory that would tend to show that the Commissioner's determinations are incorrect. See Knighten v. Commissioner,702 F.2d 59 (5th Cir. 1983), affg. per curiam an unreported order and decision of this Court. This Court generally (as is the case here) will not look behind a deficiency notice to examine evidence used or the propriety of the Commissioner's motives or of the administrative policy or procedures involved in making his determinations. Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327 (1974). Gross income means all income from whatever source derived including (but not limited to) wages. It includes income realized in any form, whether in money, property, or services. Section 61. Income *318 as defined under the Sixteenth Amendment is "gain derived from capital, from labor, or from both combined". Eisner v. Macomber,252 U.S. 189, 207 (1920). Section 61 encompasses all realized accessions to wealth. Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955). See United States v. Buras,633 F.2d 1356, 1361 (9th Cir. 1980), where the Court said--"* * * 'the earnings of the human brain and hand when unaided by capital' are commonly treated as income" and "* * * the Sixteenth Amendment is broad enough to grant Congress the power to collect an income tax regardless of the source of the taxpayer's income". [Citations omitted.] "One's gain, ergo his 'income,' from the sale of his labor is the entire amount received therefor without any reduction for what he spends to satisfy his human needs". Reading v. Commissioner,70 T.C. 730, 734 (1978), affd. 614 F.2d 159 (8th Cir. 1980). "Although the wages [gross income] received by [petitioner] may represent no more than the time-value of his work, they are nonetheless the fruit of his labor, and therefore represent gain derived from labor which *319 may be taxed as income". [Emphasis added.] See Rice v. Commissioner,T.C. Memo. 1982-129, and cases cited therein. See also Rowlee v. Commissioner,80 T.C. 1111, 1119-1122 (1983), and cases cited therein. Petitioner reported no figures for income or deductions on the Forms 1040 submitted for 1977 and 1978. On both Forms he took the Fifth Amendment. Neither constituted a return for purposes of the Internal Revenue Code. United States v. Klee,494 F.2d 394, 397 (9th Cir. 1974); Jarvis v. Commissioner,78 T.C. 646, 653-655 (1982); Ammen v. Commissioner,T.C. Memo. 1982-476. We next consider the additions to the tax under section 6653(b). The burden of proof with respect to the fraud issues is upon respondent to prove, by clear and convincing evidence, that some part of the underpayment of tax was due to fraud with an intent to evade tax. Section 7454(a); Rule 142(b); Imburgia v. Commissioner,22 T.C. 1002 (1954). That burden can be satisfied by respondent through those facts deemed admitted and conclusively established pursuant to Rule 90. [14] Here, material factual allegations *320 in respondent's request for admissions have been deemed admitted and conclusively established. In our view, those facts, which we have set forth hereinbefore in our findings of fact, clearly and convincingly establish fraud with intent to evade tax and we rely on them in sustaining respondent's determinations under section 6653(b). Rule 121 provides that a party may move for summary judgment upon all or any part of the legal issues in controversy so long as there are no genuine issues of material fact. Rule 121(b) states that a decision shall be rendered "if the pleadings * * * admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." The summary judgment procedure is available even though there is a dispute under the pleadings if it is shown through materials in the record outside the pleadings that no genuine issue of material fact exists. [15]
*321 The record here contains a complete copy of the notice of deficiency, the petition, answer, and respondent's request for admissions with attached exhibits. Respondent has amply demonstrated to our satisfaction that there is no genuine issue as to any material fact present in this record and, thus, that respondent is entitled to a decision as a matter of law. In such posture, summary judgment is a proper procedure for disposition of this case. Respondent's Motion for Summary Judgment will be granted in every respect. The final matter we consider is whether, in the circumstances here extant, we should, on our own motion, award damages to the United States under section 6673[16] and, if so, in what amount. We addressed the very heart of this matter in September of 1977 in Hatfield v. Commissioner,68 T.C. 895, 899 (1977), when we stated in clear and unequivocal language: In recent times, this Court has been faced with numerous cases, such as this one, which have been commenced without any legal justification but solely for the purpose of protesting the Federal tax laws. This Court has before it a large number of cases which deserve careful consideration as *322 speedily as possible, and cases of this sort needlessly disrupt our consideration of those genuine controversies. Moreover, by filing cases of this type, the protesters add to the caseload of the Court, which has reached a record size, and such cases increase the expenses of conducting this Court and the operations of the IRS, which expenses must eventually be borne by all of us. Many citizens may dislike paying their fair share of taxes; everyone feels that he or she needs the money more than the Government. On the other hand, as Justice Oliver Wendell Holmes so eloquently stated: "Taxes are what we pay for civilized society". Compania de Tabacos v. Collector,275 U.S. 87, 100 (1927). The greatness of our nation is in no small part due to the willingness of our citizens to honestly and fairly participate in our tax collection system which depends upon self-assessment. Any citizen may resort to the courts whenever he or she in good faith and with a colorable claim desires to challenge the Commissioner's determination; but that does not mean that a citizen may resort to the courts merely to vent his or her anger and attempt symbolically to throw a wrench at the *323 system. Access to the courts depends upon a real and actual wrong--not an imagined wrong--which is susceptible of judicial resolution. General grievances against the policies of the Government, or against the tax system as a whole, are not the types of controversies to be resolved in the courts; Congress is the appropriate body to which such matters should be referred. [17]
*324 While we did not award damages in Hatfield we issued this warning--"* * * but if tax protesters continue to bring such frivolous cases, serious consideration should be given to imposing such damages". [Citations omitted.] Similar warnings were promulgated in Crowder v. Commissioner,T.C. Memo. 1978-273 and Clippinger v. Commissioner,T.C. Memo. 1978-107. Tax protest petitions continued to be filed with this Court with increased frequency and, finally, upon motion of respondent, we began awarding damages to the United States in appropriate cases. See Wilkinson v. Commissioner,71 T.C. 633 (1979) and Greenberg v. Commissioner,73 T.C. 806 (1980). [18] Shortly after we issued Greenberg we, for the first time, awarded damages in a proper circumstance on our own motion. Syndes v. Commissioner,74 T.C. 864, 870-873 (1980), affd. 647 F.2d 813 (8th Cir. 1981). [19] Petitions filed merely for delay continued to overburden this Court's docket. In recognition of this fact, on June 15, 1981, we aptly stated-- It may be appropriate to note further that this Court has been flooded with *325 a large number of so-called tax protester cases in which thoroughly meritless issues have been raised in, at best, misguided reliance upon lofty principles. Such cases tend to disrupt the orderly conduct of serious litigation in this Court, and the issues raised therein are of the type that have been consistently decided against such protesters and their contentions often characterized as frivolous. The time has arrived when the Court should deal summarily and decisively with such cases without engaging in scholarly discussion of the issues or attempting to soothe the feelings of the petitioners by referring to the supposed "sincerity" of their wildly espoused positions. [McCoy v. Commissioner, 76 T.C. 1027, 1029-1030 (1981), affd. 696 F.2d 1234 (9th Cir. 1983).Emphasis added.] *326 This Court is not the only Court that has considered awarding damages or other costs, either on its own motion or on motion of the Commissioner, in a proper case. In a tax protester situation, where one of the frivolous issues was whether the U.S. Constitution forbids taxation of compensation received for personal services, the Fifth Circuit Court of Appeals stated in late 1981-- Appellants' contentions are stale ones, long settled against them. As such they are frivolous. Bending over backwards, in indulgence of appellants' pro se status, we today forbear the sanctions of Rule 38, Fed. R. App. P. We publish this opinion as notice to future litigants that the continued advancing of these long-defunct arguments invites such sanctions, however. [Lonsdale v. Commissioner,661 F.2d 71, 72 (5th Cir. 1981), affg. T.C. Memo. 1981-122.][20]
In Knighten v. Commissioner,supra, *327 the Court of Appeals following its warning took action. There, damages were not sought nor awarded in our Court. Damages were sought by the Commissioner and double costs were awarded in the Court of Appeals. The Court of Appeals for the Ninth Circuit has, in a summary and decisive manner, awarded double costs (under Rule 38, Fed. R. App. P.) in several tax protester cases on its own motion. On July 7, 1982, in Edwards v. Commissioner,supra at 1271, the Court said-- Meritless appeals of this nature are becoming increasingly burdensome on the federal court system. We find this appeal frivolous,Fed. R. App. P. 38, and accordingly award double costs to appellee [the Commissioner of Internal Revenue]. [Citations omitted.] [Emphasis added.] Accord, McCoy v. Commissioner,supra; Barmakian v. Commissioner,698 F.2d 1228 (9th Cir. 1982), affg. without published opinion an unreported order and decision of this Court; Martindale v. Commissioner,supra.[21]
*328 Here, petitioner has instituted these proceedings and has asserted as his defense to the Commissioner's determinations nothing but frivolous contentions. Petitioners with genuine controversies have been delayed while we considered this case. In these circumstances, petitioner cannot and has not shown that he, in good faith, has a colorable claim to challenge the Commissioner's determinations. Indeed, he knew when he filed his petition that he had no reasonable expectation of receiving a favorable decision. There has been no change in the legal climate and in view of the extensive and long well settled case precedents, no reasonably prudent person could have expected this Court to reverse itself in this situation. [22]
"When the costs incurred by this Court and respondent are taken into consideration, the maximum damages authorized *329 by the statute ($500) do not begin to indemnify the United States for the expenses which petitioner's frivolous action has occasioned. Considering the waste of limited judicial and administrative resources caused by petitioner's action, even the maximum damages authorized by Congress are wholly inadequate to compensate the United States and its other taxpayers. These costs must eventually be borne by all of the citizens who honestly and fairly participate in our tax collection system. * * *". Sydnes v. Commissioner,supra at 872-873. Since we conclude that this case was brought merely for delay, the maximum damages authorized by law ($500) are appropriate and will be awarded pursuant to section 6673. To reflect the foregoing An appropriate order and decision will be entered.
Footnotes
1. Since this is a pre-trial motion and there is no genuine issue of material fact, the Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable in these particular circumstances. This conclusion is based on the authority of the "otherwise provided" language of that rule. All rule references are to the Tax Court Rules of Practice and Procedure.
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. This is the sum and substance of petitioner's case.↩
4. See Odend'hal v. Commissioner,75 T.C. 400↩ (1980); Rule 90(a). 5. The original of that request was filed with the Court on December 27, 1982. Rule 90(b). ↩
6. See Uptain v. Commissioner,T.C. Memo. 1982-737; McKinnon v. Commissioner,T.C. Memo. 1982-229↩.
7. A copy of the Court's Order denying petitioner's motion was served on the parties by the Court on May 3, 1983.↩
8. Copies of Golden Valley's wage records, the checks petitioner received and the Forms W-2 are in this record.↩
9. Copies of the Forms W-4 and the Form W-4E duly signed by petitioner are in this record.↩
10. In such circumstance, Rule 34(b)(4) states, in part--"Any issue not raised in the assignment of errors shall be deemed to be conceded". See Jarvis v. Commissioner,78 T.C. 646, 658 (1982). Moreover, we said in Gordon v. Commissioner,73 T.C. 736, 739↩ (1980)--"* * * Any issue, including addition to tax for fraud under section 6653(b), not raised in the assignment of errors is deemed conceded by the petitioner. Rule 34(b)(4)". Notwithstanding, here, we prefer to rely on those matters deemed admitted in sustaining all of respondent's determinations.
11. We observe that venue on appeal of this case lies in the United States Court of Appeals for the Ninth Circuit.↩
12. As we view this record, petitioner is yet another in a seemingly unending parade of tax protesters bent on glutting the docket of this Court and others with frivolous claims.↩
13. See also, Martindale v. Commissioner,692 F.2d 764 (9th Cir. 1982), affg. without published opinion an unreported order and decision of this Court, United States v. Carlson,617 F.2d 518, 523 (9th Cir. 1980), cert. denied 449 U.S. 1010 (1980), and United States v. Neff,615 F.2d 1235, 1238 (9th Cir. 1980), cert. denied 447 U.S. 925↩ (1980).
14. See Hindman v. Commissioner,T.C. Memo. 1983-389↩.
15. Such outside materials may consist of affidavits, interrogatories, admissions, documents or other materials which demonstrate the absence of such an issue of fact despite the pleadings. See Note to Rule 121(a), 60 T.C. 1127↩.
16. Sec. 6673 provides-- "Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in excess of $500 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax". We observe that in proceedings commenced after December 31, 1982 this Court is permitted to impose damages up to $5,000 where those proceedings have been instituted or maintained by the taxpayer primarily for delay or where taxpayer's position in such proceeding is frivolous or groundless. See secs. 292(b) and (e)(2), Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 574. ↩
17. The language in the first paragraph quoted above, so true when stated, is all the more impelling today because of the ever increasing caseload of this Court.↩
18. See also, Goodrich v. Commissioner,T.C. Memo. 1983-414; Cornell v. Commissioner,T.C. Memo. 1983-370; Stamper v. Commissioner,T.C. Memo. 1983-248; Sommer v. Commissioner,T.C. Memo. 1983-196, on appeal (7th Cir. July 12, 1983); Jacobs v. Commissioner,T.C. Memo. 1982-198; Senesi v. Commissioner,T.C. Memo. 1981-723, affd.     F.2d     (6th Cir. 1983); Swann v. Commissioner,T.C. Memo. 1981-236↩, dismissed (9th Cir. 1981). We note that the predecessor of the statute we now consider, which in essence, contained virtually identical language, was enacted by Congress in 1926. 19. See also Vickers v. Commissioner,T.C. Memo. 1983-429; Mele v. Commissioner,T.C. Memo. 1983-387; Ballard v. Commissioner,T.C. Memo. 1982-56; and Graves v. Commissioner,T.C. Memo. 1981-154, affd. without published opinion 698 F.2d 1219↩ (6th Cir. 1982), where damages were awarded on our own motion.
20. Rule 38, Federal Rules of Appellate Procedure, provides-- DAMAGES FOR DELAY. If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to appellee.↩
21. In none of the four cases decided by the Ninth Circuit were damages sought or awarded in this Court.↩
22. "* * * [A] person's intent in performing an act includes not only his motive for acting (which may be defined as the objective which inspires the act), but also extends to include the consequences which he believes or has reason to believe are substantially certain to follow." Greenberg v. Commissioner,73 T.C. 806, 814↩ (1980).